IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOUIE MORENO, JR.,

    Petitioner,

vs.

SCOTT KERNAN, Warden,

    Respondent.

                                   /

No. CIV S-04-0289 RRB DAD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1998 judgment of conviction entered against him on September 27, 1998 in the Sacramento County Superior Court on charges of committing non-forcible and forcible lewd and lascivious acts upon a child under fourteen years of age. He seeks relief on the grounds that: (1) the admission of evidence at his trial of subsequent sexual criminal conduct violated his right to due process; (2) the admission of evidence pursuant to California Evidence Code § 1108 violated his right to due process; (3) his right to due process was violated by jury instruction error; (4) his right to due process was violated because an uncharged sexual offense was not required to be proven beyond a reasonable doubt; (5) the admission of lay opinion violated his right to due process; (6) the state court's rejection of his claim of prosecutorial misconduct violated his right to due process; (7) his

1

sentence constitutes cruel and unusual punishment; and (8) he was denied the right to effective assistance of trial counsel. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be granted with respect to his claim of jury instruction error. In light of this recommended disposition, the court will not address petitioner's remaining claims.

PROCEDURAL AND FACTUAL BACKGROUND[1]

> A jury convicted defendant Louis Moreno, Jr. of nonforcible and forcible lewd conduct with a child younger than 14 years old,[2] sustained enhancements prohibiting the grant of probation,[3] and found the divers recidivist allegations were true.[4] The trial court struck one of the serious felony findings for failure to prove personal use of a deadly weapon[5] and refused to exercise its discretion to strike the other serious felony finding.[6] It then sentenced the defendant to state prison.
>
> * * *
>
> The facts essential to the issues on appeal are few. In June 1997, the defendant lived with his then-girlfriend, her toddler sons, and their toddler daughter. They married in December 1997. The victim, born in October 1985, was the wife's younger sister.
>
> One Sunday that June, the victim was watching television in the living room. The toddlers were playing in the living room and kitchen. The defendant's wife was sleeping in the bedroom. As neither the type nor manner of the lewd conduct is at issue, we will not relate the victim's account. When the victim at last escaped the

---

[1] The following summary is drawn from the July 24, 2001 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-6, filed in this court on September 15, 2004, as Appendix A to Exhibit C to the Answer.

[2] Penal Code § 288, subdivisions (a), (b).

[3] Penal Code § 1203.066, subdivisions (a)(1) (use of force), (a)(8) (substantial sexual conduct).

[4] Penal Code §§ 667.5, subdivision (b) (prior separate prison terms), 667, subdivision (d) (prior serious felonies).

[5] People v. Rodriguez, (1998) 17 Cal. 4th 253, 261.

[6] People v. Williams (1998) 17 Cal. 4th 148, 160-161; People v. Superior Court (Romero) (1996) 13 Cal. 4th 497, 529-531.

2

defendant's advances, she ran to the bathroom and sat crying in the shower stall. The defendant implored her not to tell her sister because it would disrupt the impending nuptials. She then ran into the closet in the children's bedroom. By now, her sister was awake and inquiring what was wrong. The defendant said nothing happened; the victim contradicted him. The sister struck the defendant and phoned the police.

The responding deputy found the victim crying in a fetal position on the bathroom floor. The victim, visibly upset, reported the details of the defendant's sexual assaults. A physical examination later that day revealed abrasions to the victim's external and internal genitalia and anus consistent with her account of defendant penetrating her vagina with his fingers and grabbing her vagina and buttocks. The anal abrasions could be the result of a history of constipation, although that would be unusual, or falling on an object, which the victim did not report. They would not be the likely result of even a vigorous bout of wrestling.

The defendant testified he had been wrestling with both the toddlers and the victim. He may have touched and injured the victim's genitals or anus during the play unintentionally, but he did not have any lewd intent. The defendant's older daughters and wife described the victim as being intelligent, dishonest, overly dramatic with a tendency to exaggerate, and antagonistic toward the defendant. The defendant's wife admitted she had told investigators on the day of the incident that her sister would not make up a story about a sexual assault.

While this was a clear-cut, corroborated, contemporaneous complaint of sexual assault – countered only by the characteristic attack upon a complainant's credibility – the prosecutor felt the need to bolster the case with a subsequent incident. A 15-year-old testified that a couple of months before the September 1998 trial, a man followed her out of a market. He was wearing a hat and dark glasses, and said his name was Louie. He fondled her as she waited for a bus with her infant in her arms. He pulled her shirt away from her body and looked down it, then said, "No disrespect." He then walked over to a nearby car and sat in the passenger seat. The teenager walked back to the market to phone her foster mother. As their home was nearby, the foster mother arrived momentarily. The teenager pointed out the car in which the man was still sitting.

The foster mother crossed the street to the parked car and upbraided the occupants for sexually assaulting the teenager. The foster mother and daughter differed on which side of the car she approached. The passenger got out of the car and denied anything happening, then apologized. The foster mother could not remember whether the passenger was wearing dark glasses, but she claimed he smelled strongly of alcohol. As the foster mother

3

returned to her car and told her charges to get back in it, the passenger got into a truck parked in front of the car and drove off. The foster mother followed. She and her daughter differed over the speed of the pursuit. The foster mother caught the attention of a deputy, who told her to wait and took up the pursuit himself.

The deputy stopped the truck nearby. The defendant was driving. Another deputy brought the teenager to the location of the detention for a field identification. The teenager was at first uncertain, mentioning that her accoster had been wearing a hat and dark glasses. One of the deputies asked the defendant to don a baseball cap and glasses located on the trunk of the patrol car. The teenager was then able to identify the defendant as the man who had fondled her, although she was not able to confirm this identification in court. The testifying deputy did not recall the defendant displaying any indicia of intoxication or the smell of alcohol; the defendant's wife also testified that he had not smelled of alcohol when she last saw him that morning, about 90 minutes before his arrest. Investigators later showed the foster mother a photo array. She thought there were two who resembled the person she had pursued, choosing the defendant's picture because the other was too fat.

The foster mother also related an incident in which a young woman later came to her home and identified herself as a relative of the defendant, gave what turned out to be a false name, and demanded to talk to the teenager. When denied entry, she waved a handgun. The foster mother told the woman that the gun did not scare her and shut the door. After checking to see her children were safely upstairs, the foster mother went back to the door but the woman was gone. When the teenager heard about the incident later, she became upset and cried. The defendant's wife and one of his adult daughters admitted driving to the home of the foster mother, where the adult daughter gave a false name. They claimed having only the desire to get information from the teenager. They denied having a gun. They left because the foster mother became threatening.

Petitioner filed a timely appeal of his conviction in the California Court of Appeal for the Third Appellate District. (Answer, Ex. A.) On appeal, petitioner argued that: (1) the admission of evidence at his trial of subsequent sexual criminal conduct violated his right to due process; (2) the admission of evidence pursuant to California Evidence Code § 1108 violated his right to due process; (3) his right to due process was violated by jury instruction error; (4) his right to due process was violated because an uncharged sexual offense was not required to be proven beyond a reasonable doubt; (5) the admission of lay opinion violated his right to due

4

process; (6) the state court's rejection of his claim of prosecutorial misconduct violated his right to due process; and (7) his sentence constituted cruel and unusual punishment. Petitioner's conviction was affirmed in its entirety in a reasoned decision dated July 24, 2001. (Answer, Appendix A to Exhibit C.) Petitioner subsequently filed a petition for review in the California Supreme Court. (Answer, Ex. C.) That petition was summarily denied by order dated November 14, 2001. (Answer, Ex. G at 197.)

On May 17, 2002, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court, in which he claimed that his trial attorney rendered ineffective assistance. (Answer, Ex. D.) That petition was denied on the merits and on procedural grounds in an order dated July 8, 2002. (Answer, Ex. G at 184-190.) On December 24 and December 26, 2002, petitioner filed habeas petitions in the California Court of Appeal, raising essentially the same claims he raised in his petition filed in the Superior Court. (Answer at 2 n.3 & Ex. E.) Both of these petitions were summarily denied by two orders dated February 20, 2003. (Answer, Ex. G at 198, 199.) On April 7, 2003, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, raising the same claims. (Answer, Ex. G.) That petition was summarily denied by order dated November 25, 2003. (Answer, Ex. H.)

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

5

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Jury Instruction Error

Petitioner claims that the use of the 1996 version of CALJIC No. 2.50.01 together with CALJIC 2.50.1 at his trial violated his right to due process because it allowed the jury to

convict him based on propensity that was established only by a preponderance of the evidence. For the reasons explained below and in light of binding authority, the court will recommend that habeas corpus relief be granted with respect to this claim.

The record reflects that the state trial court admitted the evidence regarding petitioner's subsequent actions involving the teenager at the supermarket pursuant to California Evidence Code § 1108, finding that its probative value was not substantially outweighed by its prejudicial effect. (Opinion at 7.)[7] In instructing petitioner's jury how to evaluate this evidence, the trial court gave the 1996 version of CALJIC No. 2.50.01. That instruction provided as follows:

> Evidence has been introduced which may tend to show that the defendant engaged in a sexual offense other than that charged in the case.
>
> "Sexual offense" means a crime under the laws of the state or of the United States that involves any of the following:
>
> Any conduct made criminal by Penal Code Section 288(c)(1). The elements of this crime are set forth elsewhere – sorry – are set forth in the next instruction.

/////

---

[7] California Evidence Code § 1108 provides, in pertinent part:

> (a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

California Evidence Code § 352 provides:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

The California Court of Appeal concluded that the admission of evidence at petitioner's trial of his subsequent actions at the supermarket did not violate either the language or the spirit of California Evidence Code § 1108 and did deny petitioner his due process right to a fair trial, or his right to equal protection of the laws. (Opinion at 8-10.)

> If you find that the defendant committed another sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit similar sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused.
>
> You must not consider this evidence for any other purpose.

(Reporter's Transcript on Appeal (RT) at 739-40.)[8] Petitioner's jury was also instructed with CALJIC No. 2.50.1, as follows:

> Within the meaning of the instruction entitled evidence of other sexual offenses, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a sexual offense other than those for which he is on trial.
>
> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that the defendant committed the other sexual offense.

(Id. at 742; Clerk's Transcript on Appeal (CT) at 165.) After giving this instruction the trial court followed it by instructing the jury on the preponderance of the evidence standard as follows:

> "Preponderance of the evidence" means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

---

[8] This instruction was revised in 1999 to clarify how jurors should evaluate a defendant's guilt relating to the charged offense if they found that he had committed a prior sexual offense. Id. at 818. The newly revised instruction added the following language:

> However, if you find by a preponderance of the evidence that the defendant committed prior sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

CALJIC No. 2.50.01 (7th ed. 1999).

>You should consider all of the evidence bearing upon every issue regardless of who produced it.

(RT at 743.)

Petitioner claims that the use at his trial of the 1996 version of CALIC No. 2.50.01, together with CALJIC No. 2.50.1, violated his right to due process because it allowed the jury to convict him of the crimes he was actually charged with on the basis of evidence of uncharged conduct "even if the evidence of the *charged offenses* failed to satisfy the reasonable doubt standard." (Pet. at 11-12.) Petitioner reasons that the jury may have convicted him of the charged offenses simply because they found, by a preponderance of the evidence, that he had committed the subsequent uncharged acts. (Id. at 9-15.) He argues that the prejudicial effect of the jury instructions on propensity evidence was exacerbated by the failure of the trial court to instruct, sua sponte, that he could not be convicted solely on the basis of the predisposition evidence. (Id. at 13-15.) Essentially, petitioner is claiming that he suffered structural error at his trial because the jury instructions regarding propensity evidence lowered the prosecution's burden of proof required to convict him of the charged offenses.

Petitioner's argument in this regard was rejected both by the California Court of Appeal in a written decision on appeal, and summarily by the California Supreme Court. (Answer, Exs. D, F.) The California Court of Appeal explained its analysis as follows:

>Moving beyond the validity of section 1108 itself to its implementation, the defendant contends the instructions were prejudicially erroneous. None of his arguments have merit.
>
>The trial court instructed the jury that *if* it found the defendant committed another sexual offense, "you may, but are not required to, infer that the defendant had a disposition to commit similar sexual offenses"; *if* it found he had this disposition, "you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused." The court further admonished the jury it could not consider the evidence for any other purpose.

/////

/////

9

Relying on one side of a split of authority in the Court of Appeal,[9] the defendant contends this instruction violates due process because it allows the jury to convict him solely on the basis of the evidence of uncharged offenses, which requires only a preponderance of the evidence to prove.[10] There is little point in debating the principles on which these cases rest or reiterating the principles on which the cases rejecting them rest.[11] Suffice it to say we align ourselves with the latter and await the Supreme Court's resolution of the dispute. We thus reject the contention.

The defendant contends that because the jury could use his uncharged offense as evidence of disposition, there should have been an instruction requiring proof of it beyond a reasonable doubt. He recognizes in People v. Fitch we held to the contrary.[12] We are not inclined to reconsider our decision, and his posited distinction between other offenses resulting in a conviction and those which do not is immaterial to the Fitch analysis.

Finally, the defendant contends the court had a duty to instruct the jurors sua sponte that they could not convict solely on the basis of the disposition evidence. He relies on the fact we found in People v. Fitch that such an instruction refuted a claim that a defendant was convicted on the basis of his status rather than his actions,[13] and the Supreme Court's approval (in dictum) of the addition of language to this effect in 1999 to the standard set of other-offense instructions (long after the defendant's trial).[14] That courts approve of such an instruction **when given** does not impose a duty to instruct in its terms sua sponte. There is not a reasonable likelihood a jury would convict a defendant solely on the basis of other-offense evidence in the absence of a limiting instruction.[15]

/////

/////

/////

---

[9] People v. James (2000) 81 Cal. App. 4th 1343, 1352, and cases cited therein (James).

[10] People v. Carpenter (1997) 15 Cal. 4th 312, 382-383.

[11] E.g., People v. Waples (2000) 79 Cal. App. 4th 1389, 1396-1398 and footnote 8; see James, supra, 81 Cal. App. 4th at page 1352, and cases cited therein.

[12] Fitch, supra, 55 Cal. App. 4th at pages 182-183.

[13] Fitch, supra, 55 Cal. App. 4th at pages 183-184.

[14] Falsetta, supra, 21 Cal. 4th at pages 923-924.

[15] People v. O'Neal (2000) 78 Cal. App. 4th 1065, 1079 and footnote 7.

10

> Since the instruction is not otherwise erroneous, there is no duty to modify it with limiting instructions sua sponte.[16]

(Opinion at 12-14.)

The California Court of Appeals's decision affirming Moreno's conviction was contrary to clearly established federal law and he is therefore entitled to federal habeas relief on this claim pursuant to 28 U.S.C. § 2254(d)(1). This conclusion is compelled by the decision in Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004).

"Although the Constitution does not require jury instructions to contain any specific language, the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt." United States v. Lopez, 500 F.3d 840, ___, 2007 WL 2429368, *5 (9th Cir. 2007) (quoting Gibson, 387 F.3d at 820). "Any jury instruction that reduces the level of proof necessary for the Government to carry its burden is plainly inconsistent with the constitutionally rooted presumption of innocence." Id. (quoting Gibson, 387 F.3d at 820.)

In Gibson v. Ortiz, the habeas petitioner claimed that the use of CALJIC Nos. 2.50.01 (1996 version) and 2.50.1 together at his trial had unconstitutionally permitted the jury to find him guilty of the charged offenses based on a preponderance of the evidence. The United States Court of Appeals for the Ninth Circuit agreed, holding that CALJIC No. 2.50.01 and CALJIC No. 2.50.1, when given together at a criminal trial, violate the defendant's Fourteenth Amendment due process rights to be proven guilty beyond a reasonable doubt because they allow a jury to: (1) find that a defendant had committed prior sexual offenses by a preponderance of the evidence; (2) infer from those past offenses a predilection for committing sexual offenses; and (3) further infer guilt of the charged offense based on those predilections. Gibson, 387 F.3d at

---

[16] Section 355; People v. Carpenter (1999) 21 Cal. 4th 1016, 1050, footnote 6; cf. People v. Jennings (2000) 81 Cal.App.4th 1301, 1316-1318 (no duty to instruct sua sponte on limited use of evidence of uncharged acts of spousal abuse).

11

822. In this regard, the court concluded that "the interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." Id. (emphasis in original).

     Even though the jury in Gibson had been given the standard "beyond a reasonable doubt" instruction, as was petitioner's jury in this case, the Ninth Circuit found that this did not prevent the possibility of the jury finding the defendant guilty only on the basis of past offenses that had been established by a mere preponderance of the evidence. Id. at 822-23. The court concluded that the challenged instructions, when given together, "[ran] directly contrary to Winship's maxim that a defendant may not be convicted except 'upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Id. at 822 (quoting In re Winship, 397 U.S. 358, 364 (1970). Finally, the court held that the giving of these jury instructions in tandem constituted structural error within the meaning of Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993), precluding harmless error review and requiring the granting of relief. Id. at 824-25.

     The instant case is indistinguishable from Gibson in all material respects.[17] Petitioner's jury was instructed with the same version of CALJIC Nos. 2.50.01 and 2.50.1 that were given in Gibson. The decision of the California Court of Appeal approving the trial court's

/////

/////

---

[17] It is true that the prosecutor in the instant case did not belabor the preponderance of the evidence standard of proof in his closing argument to the jury. In Gibson, the court had noted that the prosecutor in that case had done so for purposes of showing "a disposition," from which the jury was encouraged to make the inference that the defendant "did in fact commit these crimes. Gibson v. Ortiz, 387 F.3d 812, 824 (9th Cir. 2004). However, the court in Gibson itself clarified, "the prosecutor's arguments are weighted much less heavily in our analysis than the instructions of the trial judge." 387 F.3d at 824. Finally, the determination that the challenged jury instructions gave rise to constitutional error was reached by the court in Gibson prior to any discussion of the prosecutor's closing argument. See Dixon v. Lamarque, No. C 01-4974 MMC (PR), 2007 WL 2316254, * 7 (N.D. Cal. Aug. 7, 2007) (citing Gibson, 387 F.3d at 822).

use of the 1996 version of CALJIC No. 2.50.01[18], in light of the jury also being instructed with CALJIC No. 2.50.1, was contrary to clearly established federal law. This is because the state trial court violated petitioner's right to due process, and committed structural error, by inviting the jury to convict him based only on propensity established by a mere preponderance of the evidence.

Based on the decision in Gibson v. Ortiz, this court recommends that habeas relief be granted on petitioner's claim that the use of the 1996 version of CALJIC No. 2.50.01 violated his right to due process. See Mejia v. Garcia, No. Civ. F 03-5489 REC DLB HC, 2006 WL 1283510 (E.D. Cal. May 10, 2006) (granting habeas relief on identical claim); Vaughn v. Adams, CV F-01-5241 OWW DLB HC, 2006 WL 2585041 (E.D. Cal. Sept. 5, 2006), adopted in 2007 WL 499629 (E.D. Cal. Feb. 13, 2007) (same); McKinstry v. Ayers, No. 1:02-CV06267 JKS, 2007 WL 1113531 (E.D. Cal. April 13, 2007) (same); Dixon v. Lamarque, No. C 01-4974 MMC (PR), 2007 WL 2316254 (N.D. Cal. Aug. 7, 2007) (same).

III. Petitioner's Other Claims

In light of the recommended disposition of petitioner's due process claim, this court will not address the other claims raised in the instant petition.

IV. Request for Judicial Notice

On March 8, 2007, petitioner filed a document entitled "request for judicial notice." Therein, he requests that this court "acknowledge" Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856 (2007), in which the United States Supreme Court held that California's determinate sentencing laws violated a defendant's right to trial by jury. In light of the

/////

---

[18] The subsequent 1999 revision to CALJIC No. 2.50.01 has been found to have cured the constitutional defects found by the Gibson court in the 1996 version given at petitioner's trial. See Smith v. Ryan, 220 F. App'x 563, **3 (9th Cir. 2007); McGee v. Knowles, 218 F. App'x 584, **1 (9th Cir. 2007); Cata v. Garcia, No. C 03-3096 PJH (PR), 2007 WL 2255224, *15-16 (N.D. Cal Aug. 3, 2007).

recommended disposition of petitioner's due process claim, petitioner's request for judicial notice will be denied.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's March 8, 2007 request for judicial notice is denied.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be granted on petitioner's claim that the use of the 1996 version CALJIC No. 2.50.01 at his trial violated his right to due process.  Subject to the following exception, proceedings in the state court leading to retrial shall be commenced within 60 days.  However, if either party appeals the judgment in this case, no criminal proceedings need be commenced until 60 days after the issuance of the mandate following a final appellate decision or the denial of a petition for writ of certiorari, whichever occurs later.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 1, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
moreno289.hc